UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MACKING NETTLES,

          Plaintiff,          Case No. 1:13-cv-1353

v.                                         Honorable Robert J. Jonker

MILDRED SMOKER et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smoker, Kowalski, Stayner, Morrison, and Taylor. The Court will serve the complaint against Defendant Hienemann.

**Discussion**

I.       Factual allegations

Plaintiff Macking Nettles presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility, though the actions about which he complains occurred while he was housed at the Lakeland Correctional Facility (LCF). Plaintiff sues the following LCF officials: Correctional Officers Mildred Smoker and Mark Kowalski; Food Service Supervisor David Stayner; Acting Food Service Director Norma Hienemann; Lieutenant (unknown) Morrison; and Captain (unknown) Taylor.

According to the complaint, Plaintiff was employed at LCF as an A-unit kitchen worker, whose duties were to deliver and serve food to prisoners housed in A-unit. At about 6:30 a.m. on April 4, 2013, as Plaintiff was leaving the main kitchen on his way to A-unit, Defendant Stayner stopped him. Stayner told Plaintiff that an A-unit officer had called and told Stayner not to let Plaintiff come to A-unit, because Plaintiff was being issued a ticket for threatening behavior. Stayner advised Plaintiff that he did not know more about the alleged ticket, and he ordered Plaintiff to return to his unit. On his way out of the main kitchen, Plaintiff asked kitchen officer Lewis if he knew what was going on. Lewis told Plaintiff that he did not know anything, except that Defendant Kowalski had called to tell the main-kitchen employees not to allow Plaintiff to come to A-unit. Plaintiff walked back to his unit and asked unit officers if they knew what was going on. Officer Randall checked the log book, but could not find anything about a threatening-behavior ticket. Officer Randall allowed Plaintiff to go about his normal business.

During lunch service, Plaintiff again asked kitchen officer Lewis if he knew what had happened. Lewis offered to check into the matter, and Plaintiff checked back with Lewis before the

end of his shift.  Lewis told Plaintiff that he had called staff in the control center, who informed Lewis that Plaintiff was getting a threatening-behavior ticket, but the control-center staff member knew nothing about the basis for the ticket.  Plaintiff later asked Sergeant Riley what was going on, and Riley made a phone call to inquire about the matter.  Riley then told Plaintiff that he could go to work in the main kitchen, but he could not go to the A-unit kitchen.  After a day had passed, Plaintiff approached Defendant Taylor.  Taylor seemed uninterested, but he offered to check into the matter.  Taylor never got back to Plaintiff about the issue.

Immediately after he was terminated from his position in A-unit, Plaintiff filed a grievance with LCF Inspector Vest.  Vest called Plaintiff into his office and, after listening to Plaintiff, told Plaintiff that he could not be terminated in such a fashion.  Vest told Plaintiff that he would call Defendant Hienemann, as she was the person who had terminated Plaintiff.  Plaintiff talked to Hienemann later that day, asking about the problem, and Hienemann showed Plaintiff a two-month-old work report written by Smoker that gave Plaintiff a poor rating.  Hienemann told Plaintiff that she was now relying on the work report to support the termination.  Plaintiff complains that he had never received the work report and, when he asked for a copy, neither Hienemann nor Stayner provided it.  Plaintiff next asked Food Steward Pitts for a copy of the report, but Pitts told him that she did not want to get into the middle of what was going on.

Defendant Morrison responded to the grievance at Step I of the grievance process. By the time of Morrison's review, Plaintiff had learned that Morrison had been the person who called in the order not to allow Plaintiff to report to A-unit on April 4, 2013.  Plaintiff contends that, as the officer who issued the order, Morrison was not permitted by policy to review the grievance. Morrison told Plaintiff that he had not issued the order.  Not believing Morrison, Plaintiff returned

to his unit and sent three kites: to Inspector Vest, to the grievance coordinator, and to Defendant Morrison. The grievance coordinator responded that Morrison had been removed from the investigation because he allegedly was involved, and he informed Plaintiff that another respondent, Lieutenant Armstrong, had been assigned. The next day, Morrison admitted to Plaintiff that he had, in fact, issued the order, because Defendant Smoker had told him that she was writing a threatening-behavior ticket. Morrison told Plaintiff that Morrison had removed himself from the grievance investigation and that Plaintiff should soon be getting his job back. The next day, after speaking with staff and checking files without locating a misconduct ticket, Lieutenant Armstrong ruled that Plaintiff's grievance was valid and that he would be reinstated in his job.

Plaintiff complains that, at the time he was terminated from his position, he had a pending grievance against Defendant Hienemann, related to his work in A-unit. In addition, shortly before he was terminated from his position in A-unit, Plaintiff had filed a grievance against Defendant Stayner. Plaintiff contends that, "[w]hen the opportunity presented itself to get plaintiff out of A Unit because staff were tired of his grievances and complaints, they took advantage of it by Hienemann unlawfully terminating Plaintiff based solely on the accusation with out due process of being given a ticket or having a hearing, thus plaintiff was not found guilty of anything, yet terminated." (Compl. ¶ 46, Page ID#9.)

Plaintiff contends that he was denied due process when he was removed from his A-unit employment in violation of MDOC policy and without notice and a hearing on the alleged threatening behavior. He specifically contends that Defendant Smoker improperly accused Plaintiff of threatening behavior; that Defendant Hienemann improperly terminated him without a hearing on the threatened misconduct ticket; that Defendant Stayner improperly sustained and enforced the

termination without notice and a finding of guilt on the misconduct charge; that Defendant Morrison improperly ordered Plaintiff not to return to his job; that Defendant Kowalski knew of Morrison's improper order and enforced it without due process; and that Defendant Taylor failed to act, despite having been informed by Plaintiff of the improper termination.

Plaintiff also alleges that Defendant Hienemann's action to remove him from his position and Stayner's action to uphold the termination were retaliatory, because Plaintiff had filed grievances against Hienemann and Stayner. Plaintiff complains that, since he was reinstated to his position, Defendants Smoker and Kowalski have grimaced and stared at him, and they occasionally have followed him to the bathroom. Yet another officer has raised his middle finger at Plaintiff.

Finally, Plaintiff alleges that the actions of Defendants Morrison, Smoker, Kowalski, Stayner, Hienemann and Taylor amounted to deliberate indifference to Plaintiff's due process rights.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff complains that he was terminated from his position without due process and that he was subsequently denied his rights under the Due Process Clause and MDOC policy.

To the extent that Plaintiff alleges that Defendants violated MDOC rules, he fails to state a constitutional claim. A failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007);

*Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

To the extent that Plaintiff complains that Defendants' actions violated his right to procedural due process, he also fails to state a claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff claims that he was wrongfully terminated from his prison job without due process. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty or property interest in prison employment under the Fourteenth Amendment. See, e.g., *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, because he has no liberty or property interest in his prison employment, Plaintiff fails to state a due process claim against any Defendant arising from the termination of his employment.

### B. Retaliation

Plaintiff alleges that he had filed a grievance against Defendant Hienemann that was pending at the time of his discharge. He also alleges that he previously had filed a grievance against Defendant Stayner. He contends that Defendant Hienemann used Smoker's declaration of intent to file a misconduct ticket against Plaintiff as an excuse to fire Plaintiff, in retaliation for Plaintiff

having filed grievances against them. Plaintiff also contends that Defendant Stayner's actions to prevent Plaintiff from going to work in A-unit were taken in retaliation for Plaintiff's grievances and complaints about his work in A-unit. In addition, Plaintiff alleges that Defendants Smoker and Kowalski retaliated against Plaintiff for successfully grieving his termination by staring, grimacing, making rude gestures, and once following Plaintiff into the bathroom.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037.

1. Defendant Hienemann

The Court concludes that Plaintiff's allegations against Defendant Hienemann are sufficient to warrant service of the retaliation claim.

2. Defendant Stayner

Plaintiff's allegations against Stayner, however, fall short of stating a retaliation claim. A defendant's statements or conduct are not evidence of retaliation if the defendant is not the

decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999). In the instant case, while Stayner stopped Plaintiff from going to his A-unit job, he told Plaintiff that he had been instructed to do so by an A-unit officer, because Plaintiff was being issued a ticket for threatening behavior. Stayner specifically advised Plaintiff that he did not know more about the alleged ticket. Plaintiff's remaining factual allegations make it clear that Hienemann, not Stayner, was the person who issued the termination. Defendant Stayner, therefore, cannot be held responsible for the action taken against Plaintiff.

### 3. Defendants Smoker and Kowalski

Plaintiff alleges that Defendants Smoker and Kowalski retaliated against him for having successfully grieved his termination. He contends that Smoker and Kowalski have given him dirty looks, made rude gestures and, on one occasion, followed him into the bathroom.

Plaintiff's allegations fail to demonstrate that either Smoker or Kowalski engaged in conduct that was sufficiently adverse to support a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) (citing *Bell*, 308 F.3d at 603). "Nevertheless, when a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law. . . . Indeed, it 'trivialize[s] the First Amendment to allow plaintiffs to bring . . . claims for *any* adverse action[,] no matter how minor.'" *Wurzelbacher*, 675 F.3d at 584

(quoting *Bell*, 308 F.3d at 603, 606 (internal quotation marks and citations omitted) (emphasis in original)). Here, Plaintiff's allegations about the conduct of Smoker and Kowalski are de minimis. Mere dirty looks and rude gestures are trivial actions that could not deter a reasonable person from exercising his First Amendment rights.

### C. Deliberate Indifference

In his final claim for relief, Plaintiff contends that Defendants Morrison, Smoker, Kowalski, Stayner, Hienemann, and Taylor were deliberately indifferent to his constitutional rights when they ignored both MDOC policy and Plaintiff's right to procedural due process before being terminated from his employment. As the Court previously discussed, Plaintiff has no constitutional right to due process before being terminated from his employment, and the violation of MDOC policy does not rise to the level of a constitutional violation. By his use of the words "deliberate indifference," however, Plaintiff arguably suggests that Defendants' actions and inactions violated his rights under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*,

452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff's allegation that Defendants deprived him of his prison job does not rise to the level of an Eighth Amendment violation. Allegations that a prisoner has been deprived of access to a prison program or employment do not implicate the Eighth Amendment. *See Rhodes*, 452 U.S. at 348 (holding that limitations on access to jobs or educational opportunities are not conditions intolerable for prison confinement under the Eighth Amendment); *Fifer v. Mich. Dep't of Corr.*, No. 96–2322, 1997 WL 681518, at *2 (6th Cir. Oct. 30, 1997) (limitations on access to programs do not violate the Eighth Amendment). As a consequence, Plaintiff's allegation that Defendants were deliberately indifferent fails to state a claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smoker, Kowalski, Stayner, Morrison, and Taylor will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's alleged due process and Eighth Amendment claims against

Defendant Hienemann. The Court will serve the Plaintiff's retaliation claim against Defendant Hienemann.

An Order consistent with this Opinion will be entered.


Dated:     February 26, 2014            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE