UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MACKING NETTLES,

        Plaintiff,

Case No. 1:13-cv-1353

Hon. Robert J. Jonker

v.

MILDRED SMOKER, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on the motion for summary judgment filed by the sole remaining defendant, Norma Heinemann (docket no. 21).[1]

    **I.**    **Plaintiff's complaint**

The Court summarized the relevant portions of plaintiff's complaint as follows:

    Plaintiff Macking Nettles presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility, though the actions about which he complains occurred while he was housed at the Lakeland Correctional Facility (LCF). Plaintiff sues the following LCF officials: Correctional Officers Mildred Smoker and Mark Kowalski; Food Service Supervisor David Stayner; Acting Food Service Director Norma Hienemann; Lieutenant (unknown) Morrison; and Captain (unknown) Taylor.

    According to the complaint, Plaintiff was employed at LCF as an A-unit kitchen worker, whose duties were to deliver and serve food to prisoners housed in A-unit. At about 6:30 a.m. on April 4, 2013, as Plaintiff was leaving the main kitchen on his way to A-unit, Defendant Stayner stopped him. Stayner told Plaintiff that an A-unit officer had called and told Stayner not to let Plaintiff come to A-unit, because Plaintiff was being issued a ticket for threatening behavior. Stayner advised Plaintiff that he did not know more about the alleged ticket, and he ordered Plaintiff

---

[1] Plaintiff's complaint and the docket sheet refer to this defendant as "Norma Hienemann."

to return to his unit. On his way out of the main kitchen, Plaintiff asked kitchen officer Lewis if he knew what was going on. Lewis told Plaintiff that he did not know anything, except that Defendant Kowalski had called to tell the main-kitchen employees not to allow Plaintiff to come to A-unit. Plaintiff walked back to his unit and asked unit officers if they knew what was going on. Officer Randall checked the log book, but could not find anything about a threatening-behavior ticket. Officer Randall allowed Plaintiff to go about his normal business.

During lunch service, Plaintiff again asked kitchen officer Lewis if he knew what had happened. Lewis offered to check into the matter, and Plaintiff checked back with Lewis before the end of his shift. Lewis told Plaintiff that he had called staff in the control center, who informed Lewis that Plaintiff was getting a threatening-behavior ticket, but the control-center staff member knew nothing about the basis for the ticket. Plaintiff later asked Sergeant Riley what was going on, and Riley made a phone call to inquire about the matter. Riley then told Plaintiff that he could go to work in the main kitchen, but he could not go to the A-unit kitchen. After a day had passed, Plaintiff approached Defendant Taylor. Taylor seemed uninterested, but he offered to check into the matter. Taylor never got back to Plaintiff about the issue.

Immediately after he was terminated from his position in A-unit, Plaintiff filed a grievance with LCF Inspector Vest. Vest called Plaintiff into his office and, after listening to Plaintiff, told Plaintiff that he could not be terminated in such a fashion. Vest told Plaintiff that he would call Defendant Hienemann, as she was the person who had terminated Plaintiff. Plaintiff talked to Hienemann later that day, asking about the problem, and Hienemann showed Plaintiff a two-month-old work report written by Smoker that gave Plaintiff a poor rating. Hienemann told Plaintiff that she was now relying on the work report to support the termination. Plaintiff complains that he had never received the work report and, when he asked for a copy, neither Hienemann nor Stayner provided it. Plaintiff next asked Food Steward Pitts for a copy of the report, but Pitts told him that she did not want to get into the middle of what was going on.

Defendant Morrison responded to the grievance at Step I of the grievance process. By the time of Morrison's review, Plaintiff had learned that Morrison had been the person who called in the order not to allow Plaintiff to report to A-unit on April 4, 2013. Plaintiff contends that, as the officer who issued the order, Morrison was not permitted by policy to review the grievance. Morrison told Plaintiff that he had not issued the order. Not believing Morrison, Plaintiff returned to his unit and sent three kites: to Inspector Vest, to the grievance coordinator, and to Defendant Morrison. The grievance coordinator responded that Morrison had been removed from the investigation because he allegedly was involved, and he informed Plaintiff that another respondent, Lieutenant Armstrong, had been assigned. The next day,

2

>    Morrison admitted to Plaintiff that he had, in fact, issued the order, because
>    Defendant Smoker had told him that she was writing a threatening behavior ticket.
>    Morrison told Plaintiff that Morrison had removed himself from the grievance
>    investigation and that Plaintiff should soon be getting his job back. The next day,
>    after speaking with staff and checking files without locating a misconduct ticket,
>    Lieutenant Armstrong ruled that Plaintiff's grievance was valid and that he would be
>    reinstated in his job.
>
>    Plaintiff complains that, at the time he was terminated from his position, he
>    had a pending grievance against Defendant Hienemann, related to his work in A-unit.
>    In addition, shortly before he was terminated from his position in A-unit, Plaintiff
>    had filed a grievance against Defendant Stayner. Plaintiff contends that, "[w]hen the
>    opportunity presented itself to get plaintiff out of A Unit because staff were tired of
>    his grievances and complaints, they took advantage of it by Hienemann unlawfully
>    terminating Plaintiff based solely on the accusation with out due process of being
>    given a ticket or having a hearing, thus plaintiff was not found guilty of anything, yet
>    terminated." (Compl. ¶ 46, Page ID#9.)

Opinion (docket no. 5 at pp. ID## 28-31).

Plaintiff alleged that defendants violated his due process rights, violated his Eighth Amendment rights, and retaliated against him in violation of the First Amendment. *Id.* at pp. ID## 31-39). The Court dismissed all of plaintiff's claims except his claim that defendant Heinemann terminated him in retaliation for filing a grievance. *Id.* at pp. ID## 34-35, 38-39; Order (docket no. 6).[2] Plaintiff seeks $30,000.00 in damages and three days lost pay. Compl. at ¶ J p. ID# 14).

II.   **Summary judgment standard**

Defendant Heinemann seeks summary judgment on plaintiff's retaliation claim. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule

---

[2] Plaintiff filed an interlocutory appeal of the order of dismissal, which is currently pending in the Sixth Circuit Court of Appeals. *See Nettles v. Heinemann*, No. 14-1468 (6th Cir.)..

56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, it is well established that *pro se* complaints, like the one filed in this action, are held to "less stringent standards than formal pleadings drafted by lawyers." *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the duty to be "less stringent" with *pro se* complaints does not require this Court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979).

### III.    Discussion

#### A.    First Amendment retaliation

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff has alleged retaliation in violation of the First Amendment.  To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

#### B.    No adverse action

Defendant Heinemann contends that plaintiff suffered no adverse action, noting that his claim for damages is limited to three days' pay which implies that he was not terminated from a work detail as alleged in the complaint. *See* Compl. at ¶ 88. For the reasons stated below, the Court concludes regardless of whether plaintiff was suspended or terminated from the work detail, neither of these events were adverse actions sufficient to support a First Amendment retaliation claim. Adverse actions sufficient to meet the "person of ordinary firmness" standard applicable to prisoners include "initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force." *Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 503 (6th Cir. 2011) (internal citations omitted). Here, plaintiff's claim is based upon the assumption that his prison work assignment is analogous to employment, and that changes in his work assignment can be viewed as adverse actions upon which he can base a First Amendment retaliation claim. This assumption is unwarranted.

Prisoners assigned to work details are not "employees" of the MDOC. *See* Policy Directive 05.02.110 ¶ A (eff. 2/25/08) ("Prisoners assigned to work are not employees of the Department and therefore are not eligible to receive workers' compensation or unemployment compensation benefits for their work assignments."). It is well established that a prisoner has no constitutional right to prison employment or to a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Dobbins v. Craycraft*, 423 Fed. Appx. 550, 552 (6th Cir. 2011). Nor does a prisoner have a right to employment under Michigan law, which gives prison administrators complete discretion regarding prisoner work assignments. *Dobbins*, 423 Fed. Appx. at 552. *See*

Policy Directive 05.01.100 ¶ O (eff. 5/30/11) ("[a]ll employable prisoners shall be classified to a work assignment unless assigned to school").[3]

These prison work assignments are not employment in the traditional sense, but a condition of confinement. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) ("[p]rison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment"); *Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010) (same); *Terrill v. Bertussi*, No. 2:05-cv-96, 2005 WL 3277990 at *3-*5 (W.D. Mich. Dec. 2, 2005) (same); *Lee v. Sikes*, 870 F. Supp. 1096, 1099-1101 (S.D. Ga. 1994) (same). Eighth Amendment claims arising from prison work assignments are typically limited to extreme working conditions which a prisoner claims to be cruel and unusual punishment. *See, e.g., Jones v. Campbell*, 25 Fed. Appx. 287, 288 (6th Cir. 2001) (rejecting prisoner plaintiff's Eighth Amendment claim for injuries suffered while working at a recycling center because defendants were at most negligent for creating the dangerous work conditions, and a prisoner "cannot base an Eighth Amendment claim on mere negligence"); *Howard v. King*, 707 F.2d 215, 219-20 (5th Cir. 1983) (inmates would be entitled to relief based upon allegations that their 56 hour, 7-day work week engaged in field labor caused perpetual exhaustion and physical breakdown).

Because a prison work assignment is a condition of confinement, a prisoner does not enjoy the benefits of a typical employer/employee relationship. Prisoners are expected to endure more than the average citizen. *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). While the "average citizen" might have certain expectations from being a contract or at-will employee, and relies upon his or her employment to provide for the necessities of life, prisoners, such as plaintiff,

---

[3] The Court notes that Policy Directive 05.01.100 was amended on January 6, 2014.

do not have a similar expectations or reliance with a prison work assignment. As discussed, prisoners with work assignments are not employees of the MDOC, and unlike the average citizen, plaintiff is in the custody of the state, which provides him housing, food, clothing and medical care. *See Colvin v. Foy*, No. 1:13–CV–465, 2014 WL 1154658, at *9 (W.D. Mich. Mar 21, 2014).

As this Court succinctly explained in *Davis v. Walton*, No. 1:12-cv-258, 2014 WL 320206 (W.D. Mich. Jan. 29, 2014):

> Prison employment is not employment in the ordinary sense, but represents a part of the rehabilitation program of the prison. The incidents described in this record are routine aspects of prison life. It trivializes the concept of First Amendment retaliation -- which was fashioned by the Supreme Court and the Sixth Circuit to assure vindication of prisoner's free-speech rights -- to allow dissatisfaction over a prison work detail to qualify as an adverse action sufficient to support a constitutional tort.

*Davis*, 2014 WL 320206 at *8. Thus, "the removal of a prisoner from his prison job has generally been held not to constitute 'adverse action' under the retaliation analysis" *Bailey v. Ingram*, No. 5:14-279. 2014 WL 5431300 at *5 (E.D. Ky. Oct. 24,2014), citing *Jewell v. Leroux*, 20 Fed. Appx. 375, 377 (6th Cir. 2001) (dismissal of prisoner from his job was not a constitutional violation and that prison officials did not retaliate against him when they transferred him to another prison after filing grievances). *See also Colvin*, 2014 WL 1154658 at *3 (denial of a prison job did not constitute adverse action because the denial did not deter the prisoner from engaging in the protected activity of filing grievances); *Cohron v. City of Louisville*, No. 3:06–CV–P570–C, 2010 WL 1049975 at *3 (W.D. Ky. March 19, 2010) (plaintiff inmate's removal from the work list did not constitute an adverse action for purposes of a retaliation claim); *Umani v. Caruso*, No. 2:07–CV–10649, 2008 WL 2216283 at *14 (E.D. Mich. May 27, 2008) ( defendant entitled to summary judgment regarding prisoner's retaliation claim based on the loss of his prison job, because "loss of a job would not deter

a person of ordinary firmness from continuing to file grievances"). Accordingly, plaintiff's retaliation claim fails for lack of an adverse action.

### C. Lack of causation

Even if the Court could accept the position that a three-day suspension from a prison work detail was an adverse action sufficient to support a First Amendment retaliation claim, plaintiff's claim against defendant Heinemann fails. Plaintiff has alleged that defendant Heinemann terminated his work assignment in retaliation for plaintiff's protected activity of filing grievances against her. Compl. at ¶ 88. In order to state a valid First Amendment retaliation claim, plaintiff must show that defendant Heinemann had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). Stated another way, "[u]nder the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038.

Here, there is no evidence that Heinemann had the authority to terminate plaintiff's prison work assignment. In her affidavit, Heinemann stated that at all times relevant to this action, she was employed by the MDOC as "Food Service Leader" at LCF. Heinemann Aff. at ¶ 1 (docket no. 22-2). Heinemann also stated that "there is no record of any request to terminate ever being written in the form of misconduct of CSJ-363 Work Assignment Report." *Id.* at ¶ 5. In addition, Heinemann pointed out that all work reports are turned into the Classification Director, Susan Mittelstadt, for processing and that Mittelstadt "has the ability to remove someone from their work assignment based on the prisoner receiving a misconduct, a poor work report, and/or other rule

9

violations." *Id.* at ¶¶ 5 and 7. Furthermore, Heinemann rejects plaintiff's allegation that he was terminated, stating that plaintiff was promoted twice after the alleged incident on May 1, 2013 and May 31, 2013. *Id.* at ¶ 11.

Plaintiff filed a response to the motion entitled "Affidavit of Macking Nettles in response to Heinemann's motion for summary judgment." *See* Nettles Aff. (docket no. 27). While plaintiff refers to this document as an "affidavit", it is not an affidavit or an unsworn declaration under penalty of perjury as allowed under 28 U.S.C. § 1746. Rather, this document is simply a response with attachments. One of the attachments, MDOC Policy Directive 05.01.100, points out the authority of the Classification Director as referenced in defendant Heinemann's affidavit. Under that policy directive "[e]ach Warden shall designate a Classification Director for the institution" who "shall have final authority for program classification decisions, subject only to review by the Warden." Policy Directive 05.01.100 ¶ C. *See also*, Policy Directive 05.01.100 ¶ GG ("[w]hen termination from a work or school assignment is necessary, the recommendation shall be submitted by the assignment supervisor using a Prisoner Program and Work Assignment Evaluation and forwarded to the Classification Director").

Viewing the evidence in the light most favorable to the non-moving party (plaintiff), there is no genuine issue of material fact to support plaintiff's claim that defendant Heinemann retaliated against him. Accordingly, Heinemann's motion for summary judgment should be granted.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Heinemann's motion for summary judgment (docket no. 21) be **GRANTED** and that this action be **TERMINATED**.

Dated: <u>March 16, 2015</u>                             /s/ Hugh W. Brenneman, Jr.
                                                        Hugh W. Brenneman, Jr.
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).